Reese, J.
delivered the opinion of the court.
This was a motion in the circuit court for Wilson county against the plaintiff in error, Mabry, and his securities, for balances of the county taxes of .that county for the years 1838 and 1839, not paid over by him to the county trustee. Judgment was rendered against the defendants below, to reverse which they have prosecuted their writ of error to this court. And here it is insisted: 1. That the bond given by the collector and his securities is not in conformity with the requisitions of the statute 1835, ch. 15, because, first, it embraces two years, 1838 and 1839, when it is insisted that there should have been a separate bond for each year; and second, because the bond is taken in the penalty of ten thousand dollars, which is less than double the amount of the aggregate of the county taxes assessed and to be collected for these two years. As to the first ground of objection, it *97 may be remarked, that the statute does not require in terms that separate bonds should be taken, but requires only that-the bond should be conditioned for the payment of the taxes, in each and every year, he may collect, on the first Monday in October; that the term of office for a sheriff and collector has always been in our State two years, and the bond has uniformly embraced the entire term. And if it had been the purpose of the legislature to have made so marked ah innovation upon established usage as the requirement of an annual bond, it is difficult to suppose that they would not have so directed in terms. As to the second objection, that the penalty of the bond taken at ten thousand dollars is less than double the aggregate amount of the taxes to be collected for the two years, which the record before us shows to be so, we are of opinion that it ought not to have the effect of protecting the plaintiffs from a judgment on motion. We are aware of the principles settled in the cases reported, 4 Yer. Rep. 155; 5 Yer. Rep. 297, and the other'cases referred to in the argument, and of their apparent analogy to the case before us. We are not disposed to question or in the least degree to shake their authority. Those are all cases in which the statute gives a specific penalty in numero, and where the liability of the principal might be much beyond that penalty. Here the liability is confined to the taxes to be collected, and the penalty of the bond prescribed by the statute is not a specific sum; it is to be double the amount of the taxes to be collected; it is a sum to be fixed by estimate and computation; and to hold, that if, in the estimated amount of the taxes when--multiplied by two, any, the least error, should intervene, it should have the effect to defeat the motion given by the statute itself, upon the ground that the bond ceased to be statutory, would be utterly to obstruct the fiscal policy of the legislature set forth in the act. If we are correct in supposing that the bond may be taken to cover two years, it would bo almost impossible to attain entire accuracy in fixing the precise amount of the penalty so as to make it double the amount of the taxes. This difficulty, inherent in the provisions of the statute itself, imposes upon us the duty of exempting *98 a case like the present arising under it from the scope of the principles maintained in the cases referred to.
2. As a portion of the taxes due in the case before us was from the keepers of stallions and jacks, and the exhibitors of shows, it is contended that so much is unconstitutional. The act of 1835, ch. 15, sec. 4, prohibits in general the keeping of those animals for profit in the propagation of stock, and the exhibitions of shows, but concedes the privilege of doing so to all those who shall apply for a license and pay for the privilege the amount specified in the act. The constitution in express terms confers upon the legislature the power to tax privileges. But, it is contended that the avocations in question are not in themselves, and in their nature, privileges. They are not so indeed, unless prohibited. in general by the law; but when so prohibited, the license or permission to pursue them becomes a privilege, and the subject of the taxing power of the legislature. The 7th section of the 11th article, which prohibits the legislature from granting privileges, immunities or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law, shows the sense in which the convention use the term. It is the license or permission, upon the specified terms, to do that which in general is prohibited. Such license or permission, as has been said, becomes a privilege and the subject of taxation. But it is said, that to concede to the legislature unlimited power to prohibit particular pursuits and avocations in themselves indifferent or useful, and then to license them on specified terms, and tax the privilege, might make the pursuit of farming itself a subject of taxation. The danger is somewhat remote of the indiscreet exercise of such a power, but if it were to occur the corrective would have to be applied by the people themselves in .the exercise of their elective franchise.
Let the judgment be affirmed.